UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

J&J SPORTS PRODUCTIONS, INC.             CIVIL ACTION

VERSUS

ONYX ULTIMATE BAR AND GRILL       NO.: 17-00589-BAJ-EWD
LLC., ET AL.

## RULING AND ORDER

Before the Court is the **Motion for Default Judgment (Doc. 10)** filed by Plaintiff J&J Sports Productions, Inc., in which Plaintiff seeks a default judgment against Defendants Onyx Ultimate Bar and Grill LLC. ("Onyx") and Nettie Brown ("Brown"). Jurisdiction is proper under 28 U.S.C. § 1331. For the following reasons, the Motion for Default Judgement (Doc. 10) is **GRANTED**.

I.     **BACKGROUND**

Plaintiff is a nationwide distributor of closed circuit pay-per-view events. (Doc. 1 at ¶ 2). Through a valid and enforceable contract, Plaintiff purchased commercial distribution and broadcast (closed circuit) rights to "Mayhem" Floyd Mayweather, Jr. v. Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program ("the Program"). (Doc. 10-11 at p. 2). Through sublicensing agreements, Plaintiff granted various entities limited rights to display the Program on September 13, 2014, at their respective establishments. (*Id.*). Defendants Onyx and Brown, its sole manager (*see* Doc. 10-13), did not have a sublicensing agreement with Plaintiff nor any right to broadcast the Program. (Doc. 10-8). However, at the time of the Program's

1

transmission, Plaintiff claims that Defendants knowingly and unlawfully "intercepted, received, published, divulged, displayed, and/or exhibited" the Program at its establishment. (Doc. 1). Plaintiff also asserts that Brown "specifically and wilfully [sic]" directed employees to illegally intercept and broadcast the Program on the premises. (*Id.* at ¶ 14).

Plaintiff subsequently filed its Complaint on August 27, 2017, asserting violations of the Federal Communications Act ("FCA"), Title 47 U.S.C. § 605, the Wire Tap Act, Title 18 U.S.C. § 2511 in conjunction with § 2520, and the FCA, Title 47 U.S.C. § 553. (Doc. 1 at ¶ 2). Plaintiff seeks statutory damages, attorney's fees and costs under § 605, § 2520, and § 553. (*Id.* at p. 13). The Clerk of Court entered a default on November 2, 2017, because Defendants failed to file an Answer or motion under Rule 12. (Doc. 8). Plaintiff then filed the pending Motion for Default Judgment. (Doc. 10).

## II. LEGAL STANDARD

The United States Court of Appeals for the Fifth Circuit has adopted a three step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life*, 84 F.3d at 141.

2

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, a court must consider whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default have been clearly established, (4) whether the default was caused by excusable neglect or good faith mistake, (5) the harshness of the default judgment, and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.*

Second, the Court must assess the merits of the plaintiff's claims and determine whether the plaintiff has a claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016).

### III. DISCUSSION

#### A. Default Judgment is Appropriate under the *Lindsey* Factors

The Court must first decide whether the entry of default judgment is appropriate under the circumstances, by considering the *Lindsey* factors. First, there are no material facts in dispute because Defendants failed to file an Answer or motion under Rule 12. Second, it is undisputed that Defendants have not responded to any of Plaintiff's attempts to contact him. Third, the grounds for granting a default judgment against Defendants are clearly established, as evidenced by the action's

3

procedural history and the Clerk's entry of default. Fourth, the Court has no basis to find that Defendants' failure to respond was the result of a good faith mistake or excusable neglect because Defendants have failed to respond to Plaintiff or to the Court. Fifth, Defendants' failure to file any responsive pleading or motion mitigates the harshness of a default judgment. Finally, the Court is not aware of any facts that would lead it to set aside the default judgment if challenged by Defendants. The Court therefore finds that the six *Lindsey* factors weigh in favor of default.

### B. The Sufficiency of the Pleadings

The Court must also determine whether Plaintiff's pleadings provide a sufficient basis for a default judgment. Plaintiff sued Defendants under, (1) 47 U.S.C. § 605(a), which prohibits interception and publishing radio communication; (2) 18 U.S.C. § 2511, which prohibits intentional interception of any wire, oral, or electronic communication, in conjunction with § 2520, which creates a private right of action; and (3) 47 U.S.C. § 553, which prohibits interception or reception of any communications service offered over a cable system. Plaintiff further alleges that Defendants willfully and intentionally intercepted the Program and did so for the purpose of commercial advantage or private financial gain, warranting enhanced statutory damages. (Doc. 10-5 at p. 4–5).

In an identical case, the Fifth Circuit held that 47 U.S.C. § 605 does not encompass the conduct presented here: the receipt or interception of communications by wire from a cable system. *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). Section 605 states that "[n]o person not

4

being entitled thereto shall receive or assist in receiving any interstate or foreign communication by *radio* and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." *Id.* (quoting 47 U.S.C. § 605(a) (emphasis added)). In addition, § 605 prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. *Id.* at § 605(a). Radio communications are defined as "the *transmission by radio* of [communications] of all kinds, including all instrumentalities, facilities, apparatus, and services . . . incidental to such transmission." *Mandell Family Ventures.*, 751 F.3d at 351 (quoting 47 U.S.C. §153(40)).

Here, it is undisputed that the communications were not transferred to the Defendants by radio, but by cable, which makes them "communication[s] by wire" as that term was separately defined by Congress in the FCA. *Id.*; *see* 47 U.S.C. § 153(59). Therefore, Plaintiff's pleadings do not provide a sufficient basis for a default judgment under 47 U.S.C. § 605.

As to an action brought under the Wire Tap Act, 18 U.S.C. § 2511 in conjunction with § 2520, the statute clearly states, "a civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Here, Plaintiff's first opportunity to discover the alleged violation was on the same day the violation took place, that is, on September 13, 2014. (Doc. 10-1 at ¶ 1). The claim was filed on August 27, 2017. (Doc. 1). Therefore, because Plaintiff's claims were filed

5

beyond the two year prescriptive period, that is, 11 months late, the claims under 18 U.S.C. § 2511 and § 2520 are time barred. Therefore, Plaintiff's pleadings do not provide a sufficient basis for a default judgment under 18 U.S.C. § 2511.

Nonetheless, the Court finds that Plaintiff has presented a sufficient basis for a default judgment under 47 U.S.C. § 553. Section 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so." *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting 47 U.S.C. § 553(a)(1)).

Here, Plaintiff has alleged that its investigators observed the Program being shown to approximately 90 persons on three screens at Onyx during the Program's September 13, 2014, broadcast. (Doc. 10–7). Plaintiff further avers that it purchased and retained the exclusive commercial exhibition licensing rights to the Program, and that it did not sublicense those rights or any other rights concerning the Program to Defendants. (Doc. 10-1 at ¶¶ 1, 8; Doc. 10-11). Additionally, Plaintiff maintains that the Program "cannot be mistakenly, innocently or accidentally intercepted." (Doc. 10-9 at ¶ 9). Plaintiff admits that it has not alleged exactly how the Program was unlawfully intercepted, but contends that it has been unable to do so because of Defendants' failure to respond to Plaintiff's lawsuit. (Doc. 10-5 at p. 4).

What is clear to the Court is that Defendants unlawfully exhibited the fight without lawfully purchasing the Program. Defendants failed to purchase the licensing fee, but willfully chose to broadcast the fight to its approximately 90 patrons at its commercial establishment and served alcoholic beverages and food. Therefore,

Plaintiff has demonstrated a sufficient basis for default on Plaintiff's Communications Act claim under 42 U.S.C. § 553. Plaintiff's motion for default judgment is granted.

### C. Plaintiff's Requested Relief

Plaintiff requests that the Court award statutory damages, attorney's fees and costs under §§ 605, 2520, and 553. (Doc. 1 at p. 13). The Court has previously ruled that Plaintiff does not have valid claims under § 605 or § 2520. Therefore, the Court will address each of these requests for relief as it pertains to § 553. Section 553(a)(1) provides an array of civil remedies for unauthorized interception of cable signals. Prevailing parties may obtain injunctive relief, damages, and attorney's fees and costs. *Prostar,* 239 F.3d at 673 (citing 47 U.S.C. § 553(c)(2)).

#### *1. Applicable Damages*

Plaintiff seeks $60,000 in statutory damages under 42 U.S.C. § 553, and alleges that enhanced damages are warranted due to willful violations and commercial advantage. (Doc. 1 at p. 13). Section 553 contemplates the award of either (1) actual damages suffered by Plaintiff, as well as recovery of profits gained by the person violating the Act; or (2) statutory damages of an amount not less than $250 and not more than $10,000, "as the court considers just." *Prostar,* 239 F.3d at 674 (quoting 47 U.S.C. §553(c)(3)(A)(ii)). Further, a court may increase an actual or statutory damage award by no more than $50,000 if it finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. §553(c)(3)(B).

7

a. Statutory Damages

Courts have employed a number of different methods to determine a "just" amount of statutory damages, including imposing a "flat, sum for damages" or a calculated sum based on the number of patrons in the defendant's establishment at the time of the violation. *J&J Sports Prods., Inc. v. KCK Holdings*, 2015 WL 4656714, at *5 (M.D. La. Aug. 5, 2015) (citations omitted). Courts have also imposed damages in an amount equal to the appropriate sublicensing fee for the establishment, but it has been noted that such a penalty may not deter future violations. *Id.* (citations omitted). Instead, some courts have imposed statutory damages in an amount equal to a multiple of the sublicensing fee. *Id.* (citations omitted). The Court's goal is to balance the financial burden that a significant damages award will place on Defendants with Plaintiff's financial harm, the policy and enforcement considerations behind preventing piracy, and the importance of deterrence. *Id.* (citing *Joe Hand Promotions, Inc. v. Trenchard*, 2014 WL 854537 (D.Conn. Mar. 3, 2014).

The Court finds that statutory damages in an amount twice what the sublicensing fee for lawful broadcast would have been is "just" under the circumstances in this case. *See id.* Here, Plaintiff has established that Defendants' sublicensing fee would have been, at most, $3,000.00 because "[t]he cost to purchase a license to receive the television signal of the Program by a business with a capacity of one hundred (100) to one hundred fifty (150) was $2,200 to $3,000.00." (Doc. 10-1

at ¶¶ 2, 6; Doc. 10-10 at p. 2; Docs. 10-7, 10-8). Therefore, the Court awards Plaintiff statutory damages in the amount of $6,000.

    b. Enhanced Statutory Damages

"Even given a lack of direct evidence that a defendant acted willfully and for purposes of commercial advantage or private financial gain, courts have found the allegation that an innocent, mistaken, or accidental interception of a broadcast is not possible to be sufficient for a showing of willfulness." *KCK Holdings*, 2015 WL 4656714, at *5 (citing *Entm't by J & J v. Al–Waha Enters., Inc.*, 219 F.Supp.2d 769, 776–77 (S.D.Tex.2002)). Courts consider five factors in determining the appropriate amount of additional damages for a willful violation, including:

> (1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages.

*Id.* (quoting *Trenchard*, 2014 WL 854537, at *4). Here, Plaintiff expressly alleges that "to the best of [its] knowledge [its] program[] is *not* and cannot be mistakenly, innocently or accidentally intercepted." (Doc. 10-9 at ¶ 9). The Court finds this showing to be sufficient for additional damages. However, Plaintiff does not make a showing here that Defendants repeatedly violated the statute over a period of time. Nonetheless, there is a sufficient showing that Defendants made substantial unlawful monetary gains by serving alcoholic beverages and food during the broadcast because the broadcast most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages. (Docs. 10-7, 10-8). In

9

addition, Plaintiff's investigator noted that after she entered Onyx, an employee was "at the door accepting money to get in the venue" (Doc. 10-8 at p. 1), and another investigator noted that she observed "3 TV's approximately 50" each," and counted approximately 90 patrons. (Doc. 10-7 at p. 1). Plaintiff attests to investing considerable resources to combating piracy, but assigns a value only to the maximum $3,000 sublicensing fee it was denied due to Defendants' unlawful behavior in actual damages. (Doc. 10-5 at p. 4).

Here, due to Defendants' commercial advantage, the Court awards additional damages of $24,000, which reflects an award equal to four times the amount of the statutory damages awarded. *See KCK Holdings*, 2015 WL 4656714, at *5 (citing *G & G Closed Circuit Events, LLC*, 2014 WL 198159, at *4 (awarding three times the statutory damages amount for a willful violation where the defendant did not charge an admission fee and was observed to have approximately twenty-five patrons at the time of the violation). *See also J & J Sports Prods., Inc. v. Giuseppe's Bistro, LLC*, 2015 WL 1540364, at *5 (E.D. La. Apr. 6, 2015) (the Court considered factors such as the number of televisions on which the defendants broadcast the program, the food and beverages sold to customers, whether there was a cover charge, and whether it was broadcast in an urban area where the broadcast would have had more than a minimal impact). *See, e.g., Time Warner Cable of N.Y.C. v. Taco Rápido Rest.*, 988 F.Supp. 107, 111–12 (E.D.N.Y.1997) (showing Event on multiple televisions is evidence of commercial advantage, and "defendant's display of the Event most likely led to an increased number of patrons, and thus to an increase in profits from food

and beverages."); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 WL 3069935, at *6 (S.D.Tex. July 27, 2012), *aff'd*, 544 F. App'x 444 (5th Cir.2013) ("It is the Court's view that the defendant profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast").

### 2. *Attorney's Fees and Costs*

Plaintiff seeks attorney's fees of $3,000 to $4,000 and costs of litigation. (Doc. 10-5 at p. 9; Doc. 10-4). Under 42 U.S.C. § 553, courts have the discretion to grant the prevailing party reasonable attorney's fees and costs. § 553(c)(2)(C). Courts use a two-step process to calculate reasonable attorney's fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Id.* Second, the court considers whether the lodestar should be adjusted upward or downward depending on the circumstances of the case, using twelve factors.[1] *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours expended and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Plaintiff submitted a detailed affidavit indicating that its attorney billed 10.3 hours at an unstated hourly rate (Doc. 10-4); however, Plaintiff provides in its

---

[1] "The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Migis*, 135 F. 3d at 1047.

memorandum that its attorney "has been awarded attorney's fees of $300 per hour in the Eastern District of Louisiana." (Doc. 10-5 at p. 9 n. 35). Thus, the total requested in attorney's fees is $3,090.00. The Court finds that these fees are reasonable and no upward or downward adjustment is necessary. Therefore, $3,090.00 is an appropriate award for attorney's fees.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Default Judgment (Doc. 10)** filed by Plaintiff is **GRANTED**.

**IT IS FURTHER ORDERED** that an award of statutory damages is hereby entered in favor of Plaintiff J&J Sports Productions, Inc., against Defendants Onyx Ultimate Bar and Grill LLC. and Nettie Brown, in the amount of $30,000.00—that is, $6,000 in statutory damages and $24,000 in enhanced statutory damages.

**IT IS FURTHER ORDERED** that an award of attorney's fees is hereby entered in favor of Plaintiff in the amount of $3,090.00.

**IT IS FURTHER ORDERED** that Plaintiff is awarded costs, and shall file a Memorandum of Costs in the form required by the Clerk of Court within thirty days of entry of the Judgment, in accordance with Local Rule 54(c).

Baton Rouge, Louisiana, this 8th day of January, 2018.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA